LEE and others, Respondents, vs. SIMMONS, Assignee, etc., Appellant.

*February 27 — March 16, 1886.*

*Sale of chattels: Fraud: Rescission: Voluntary assignment.*

1. Where a merchant orders goods, knowing himself to be insolvent, without disclosing his insolvency, and with the preconceived purpose of not paying for them at all, or, at most, only a very small per cent., and with the further preconceived purpose of having them swell his assets for the benefit of those whom he intends to make his preferred creditors, the purchase is fraudulent, and the vendor, upon discovering the fraud, may rescind the contract and retake the goods as against the vendee or his assignee for the benefit of creditors.

2. The fact that the assignee advances the freight on the goods to the carrier will not make him a *bona fide* holder, nor entitle him to retain the goods until he shall be reimbursed.

3. Nor will the fact that the vendee has appropriated to his own use a part of the goods, before the vendor discovered the fraud, prevent the vendor from reclaiming the goods not appropriated, after he has discovered the fraud.

APPEAL from the Circuit Court for *Fond du Lac* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action of replevin.   The court found, in effect,

(1) that February 8, 1883, the plaintiffs were, and for a long time had been, merchants in New York; (2) that on the day named the defendant's assignor, Whittelsey, was, and for several years next prior thereto had been, a merchant at Fond du Lac; that during that time he had purchased goods from the plaintiffs, and had always been in good standing and credit with them, and continued to be up to February 27, 1883; (3) that February 8, 1883, Whittelsey gave to the plaintiffs' traveling agent a verbal order for the goods in question, and about the same time another verbal order for goods of the value of $24.51; that the order last named was shipped by the plaintiffs about February 14, 1883, by express, with charges prepaid, and was delivered to Whittelsey by the express company, February 22, 1883; (4) that the plaintiffs shipped the goods in suit to Whittelsey by railroad, and they arrived at the depot in Fond du Lac after the day and date of his assignment; (5) that February 27, 1883, Whittelsey made an assignment of all his property to the defendant for the benefit of his creditors, (6) including the goods in suit; that his debts then amounted to $36,000, and his assets only $26,500; that the preferred debts scheduled in the assignment amounted to $19,000, including particular friends and relatives of the assignor; that the bill for the goods in suit was scheduled among Whittelsey's unpreferred creditors; that February 28, 1883, the defendant, as such assignee, demanded the goods in suit from the railway company, and received and took them into his possession; (7) that thereupon, and prior to the commencement of this action, the plaintiffs demanded the goods in suit from the defendant, but he neglected and refused to deliver up the same; (8) that said goods were then of the value of $809.58; (9) that the plaintiffs always believed said Whittelsey to be solvent up to the day of his said assignment, and that they had no knowledge or information that he intended to make an assignment, or had made an assignment, until after the

defendant had taken actual possession of the goods in suit; (10) that when said Whittelsey ordered the goods in suit, and from thence down to the time when he made the assignment, he knew he was insolvent and unable to pay for the goods, and was, at the time he ordered the same, contemplating the making of an assignment for the benefit of his creditors, and then knew that an assignment, within a very short time, would become necessary in order to prefer any of his creditors (ch. 349, Laws of 1883, about to be passed), and that in all probability he could not not pay for the goods so ordered; (11) that at the time of the receipt by said Whittelsey of the goods amounting to $24.51, he knew he was insolvent and unable to pay for the goods, and did not intend to pay for them; that he then intended to make an assignment for the benefit of his creditors, and knew that he could not pay for the goods, but that the same, if held by his assignee, would go to swell his assets for the benefit of his preferred and other creditors, and deprive the plaintiffs of their goods, or the pay for them, except a dividend; (12) that the plaintiffs sustained six cents damages by the unlawful detention of said goods in suit by the defendant.

As conclusions of law the court found, in effect, that the plaintiffs were the owners and entitled to the possession of the goods in suit; that the defendant unlawfully detained the same; that their value was as found; that the plaintiffs had sustained six cents damages by the unlawful detention. From the judgment entered upon such findings the defendant appeals.

For the appellant there was a brief by *Sutherland & Sutherland*, and oral argument by *Mr. D. D. Sutherland*. They contended, *inter alia*, that the plaintiffs could not rescind until they had refunded to the defendant the freight paid by him. *Hendricks v. Goodrich*, 15 Wis. 679; *Cook v. Berlin W. M. Co.* 56 id. 643. The fact that when Whittelsey ordered the goods he knew he was insolvent, and was

contemplating making an assignment, and knew that probably he could not pay for the goods, does not show a *dishonest purpose* on his part.   He had a right to attempt to make himself solvent and to delay or totally prevent the necessity of an assignment.   *Nichols v. Pinner,* 18 N. Y. 295; *Hall v. Naylor,* id. 588; *Fish v. Payne,* 7 Hun, 586; *Rodman v. Thalheimer,* 75 Pa. St. 232; *Smith v. Smith,* 21 id. 367; *Mitchell v. Morden,* 20 Barb. 253; *Biggs v. Barry,* 2 Curtis, 259; *Cross v. Peters,* 1 Me. 378; *Garbutt v. Bank of P. du C.* 22 Wis. 384.

For the respondents there was a brief by *Henry F. Rose,* attorney, and *A. M. Blair,* of counsel, and oral argument by *Mr. Blair.*

CASSODAY, J.   The facts are undisputed.   They appear by the stipulation of the parties, and the testimony of the defendant, his assignor, and his clerk.   They more than justify the findings as above stated.   From these facts we think the court was justified in holding that the purchase was fraudulently made.   Where, as here, a person orders goods knowing himself to be insolvent, without disclosing his insolvency, and with the preconceived purpose of not paying for them at all, or, at most, only a very small per cent., and with the further preconceived purpose of having them swell his assets for the benefit of those whom he intends to make his preferred creditors, the purchase is fraudulent, and the vendor, upon discovering the fraud, may rescind the contract, and retake the goods, as against the vendee.   *Nichols v. Pinner,* 18 N. Y. 295; *S. C. (Nichols v. Michael),* 23 N. Y. 266; *Hennequin v. Naylor,* 24 N. Y. 139; *Devoe v. Brandt,* 53 N. Y. 462; *Pike v. Wieting,* 49 Barb. 314; *Wright v. Brown,* 67 N. Y. 1; *Dow v. Sanborn,* 3 Allen, 181; *Thompson v. Rose,* 16 Conn. 71; *Morrill v. Blackman,* 42 Conn. 324; *Shipman v. Seymour,* 40 Mich. 274; *Donaldson v. Farwell,* 93 U. S. 631; *Stewart v. Emerson,* 52 N. H.

301.  The case of *Garbutt v. Bank of P. du C.* 22 Wis. 384, is clearly distinguishable.  The defendant, as assignee for the benefit of creditors, took the goods subject to the equities between the original parties, and hence is in no better position to defend against this action than Whittelsey would have been had the suit been brought against him before the assignment.  *Nichols v. Michael, supra; Devoe v. Brandt, supra; Dow v. Sanborn, supra.*

The mere fact that the defendant voluntarily advanced to the railway company the freight on the goods did not make him a *bona fide* holder, nor entitle him to retain the goods until he should be reimbursed; nor did the fact that the vendee received and appropriated to his use the goods sent by express, before the plaintiffs discovered the fraud, prevent them from reclaiming the goods not so appropriated when they did discover the fraud.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 27 N. W. Rep. 176.— REP.

